PETRO–CHEM PROCESSING,
INC., Petitioner

v.

ENVIRONMENTAL PROTECTION
AGENCY, Respondent.

HAZARDOUS WASTE TREATMENT
COUNCIL, Petitioner,

v.

ENVIRONMENTAL PROTECTION
AGENCY, Respondent.

Nos. 87–1487, 87–1548 and 88–1177.

United States Court of Appeals,
District of Columbia Circuit.

Nos. 87–1487, 87–1548 Argued
Oct. 31, 1988.

No. 88–1177 Argued Nov. 1, 1988.

Decided Jan. 13, 1989.

Ridgway M. Hall, Jr. and Richard G. Stoll, with whom Barbara A. Myers and R. Timothy McCrum were on the joint brief for the petitioners in Nos. 87–1487 and 87–1548. David B. Graham, Washington, D.C., also entered an appearance for petitioner in No. 87–1487.

David R. Case, for petitioner in No. 88–1177.

Scott A. Schachter, Atty., Dept. of Justice, with whom Roger J. Marzulla, Asst. Atty. Gen., Dept. of Justice, and Caroline H. Wehling, Atty., E.P.A., were on the brief, for respondent in Nos. 87–1487 and 87–1548.

Lisa F. Ryan, Atty., Dept. of Justice, with whom Roger J. Marzulla, Asst. Atty. Gen., Dept. of Justice, Lawrence Jensen, General Counsel, Frederic D. Chanania, Washington, D.C., and Nandan Kenkeremath, Attys., E.P.A., were on the brief, for respondent in No. 88–1177.

Charles F. Lettow, McLean, Va., Matthew D. Slater, Washington, D.C., and R. Kinnon Goleman, were on the brief for amicus curiae, urging dismissal of petition in No. 88–1177.

Before RUTH BADER GINSBURG, SILBERMAN and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Petitioners Hazardous Waste Treatment Council (HWTC) and Petro–Chem Processing, Inc., in Nos. 87–1847 and 87–1548, challenge an Environmental Protection Agency (EPA or Agency) time-extension decision; the challenged decision enlarged by more than three years the deadline for "big city" cement kilns to apply for "interim status," which would allow them to burn liquid hazardous waste without a permit. Petitioners also challenge a decision of the Agency that would allow St. Mary's Peerless Cement Company, a big city cement kiln in Detroit, to qualify for interim status despite St. Mary's alleged failure to meet the deadline for filing the requisite "Notification of Hazardous Waste Activity." Petitioners assert that these Agency actions violate the Resource Conservation

and Recovery Act (RCRA), 42 U.S.C. §§ 6901–6991i (1982 & Supp. IV 1986), which establishes a comprehensive scheme to regulate hazardous wastes, the Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706 (1982), and the EPA's own regulations. Petitioner HWTC, in No. 88–1177,[1] challenges EPA regulations authorizing for the first time the disposal of hazardous waste in salt domes, salt bed formations, underground mines, and caves. HWTC asserts that these regulations are incompatible with RCRA. Bound by this court's recent decision in *Hazardous Waste Treatment Council v. EPA*, 861 F.2d 277 (D.C. Cir.1988), *reh'g en banc denied* (Dec. 20, 1988) (*HWTC II*), we dismiss these petitions on the ground that the challengers lack standing to pursue judicial review.

### I. Competitor Claims

In their initial briefs, filed before the opinion in *HWTC II*, 861 F.2d 277, issued, petitioners' standing arguments tracked those advanced and rejected in *HWTC II*. HWTC is a national trade organization of firms engaged in the treatment of hazardous waste and the manufacture of equipment for that purpose; the organization alleged that it had standing as a representative of its member companies under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (recognizing organizational standing based on injuries to members if the interests of those members are germane to the organization's purpose and if the participation of individual members is not required). Petro–Chem alleged injury on its own behalf.

In Nos. 87–1487 and 87–1548, HWTC alleged that its members would sustain competitive and economic injury because of EPA's extension of the interim status deadline, 52 Fed.Reg. 34,779 (1987) (notice of extension of compliance date), and the Agency's grant of interim status to St. Mary's. Specifically, HWTC asserted that

---

1. *Petro–Chem Processing, Inc. v. EPA*, Nos. 87–1487, 87–1548, and *Hazardous Waste Treatment Council v. EPA*, No. 88–1177, were briefed and argued separately. We consolidate the three review petitions for disposition in this opinion.

St. Mary's and other new entrants would avoid many of the costs and the waiting period involved in obtaining a permit and would reduce the supply of hazardous waste available to HWTC's members, thus depriving them of revenue. Joint Brief of Petitioners at 8–9, 43–46 (Nos. 87–1487, 87–1548). Petro–Chem is a Detroit company that blends hazardous waste fuels for burning in industrial furnaces such as cement kilns; Petro–Chem alleged that St. Mary's entry into the market would reduce Petro–Chem's supply of hazardous waste and its blending revenue because St. Mary's fuel would be processed by a competing blending operation. *Id.* at 10, 62–63.

In No. 88–1177, HWTC alleged that its members would suffer injury from (1) EPA's determination, 52 Fed.Reg. 46,946, 46,953 (1987) (preamble to final rule), to allow the disposal of hazardous wastes into salt domes, underground caves, and mines, through an "injection well," with only a RCRA "permit-by-rule" under 40 C.F.R. § 270.60(b), and (2) EPA's definition of "miscellaneous unit," 52 Fed.Reg. 46,963 (1987) (to be codified at 40 C.F.R. § 260.10), to include salt domes, mines, and caves, thereby allowing the disposal of hazardous waste into such geologic repositories, by means other than an injection well, subject only to the general performance standard of subpart X, 52 Fed.Reg. 46,964–65 (1987) (to be codified at 40 C.F.R. § 264.601), and not to any specific technical standards. These EPA actions, allegedly in violation of RCRA section 3004(b)(2), 42 U.S.C. § 6924(b)(2) (Supp. IV 1986), would, according to HWTC, lead to the diversion of haz-

ardous wastes into geologic repositories and thus allow competitors using these cheaper disposal methods to gain business at the expense of HWTC members. Reply Brief of Petitioner at 4 (No. 88–1177).

*HWTC II*, 861 F.2d 277, held, however, that the prudential requirement for standing under RCRA was not met by HWTC's allegations that lax regulation of competitors would cause economic harm to HWTC members. In that case, HWTC sought review of EPA's prescription, 50 Fed.Reg. 49,164 (1985), excluding from the hazardous waste fuel regulations some used oil that has acquired the characteristics of hazardous waste. HWTC charged that the exclusion violated RCRA. The *HWTC II*, 861 F.2d 277, panel held that HWTC's members' interest in stricter regulation of their competitors fell outside the zone of interests Congress intended to protect in enacting RCRA. Firms concerned about regulatory laxity, such as those represented by HWTC, the court said, lacked standing "[i]n the absence of any suggestion either of congressional intent to improve the competitive position of high tech recyclers, or of any reason to picture such firms as suitable challengers of the agency." *HWTC II*, 861 F.2d at 284. Neither condition, the court concluded, was met by HWTC members. The court discerned no congressional intent to improve the competitive position of high tech recyclers. Nor did it see any reason to regard such firms as "suitable challengers" of the Agency's action.[2]

On October 13, 1988, six days after *HWTC II*, 861 F.2d 277, issued, we request-

---

**2.** In the instant cases, HWTC also alleges institutional harm from EPA's actions over and above the impacts on its members. Specifically, HWTC alleges that EPA's actions will frustrate the environmental purpose and programs of HWTC, damage the public's trust in the hazardous waste treatment industry, and deprive HWTC of dues by decreasing members' income. Joint Brief of Petitioners at 9–10, 52–54 (Nos. 87–1487 and 87–1548); Reply Brief of Petitioners at 7–8 (No. 88–1177).

This court rejected similar arguments concerning frustration of the organization's purposes and damage to the public's trust in *HWTC II*, however, because HWTC failed to link the alleged injuries to RCRA's purpose. If a general coincidence of RCRA's purposes and HWTC's

goals were sufficient to satisfy the prudential standing requirement, this court reasoned, "persons with only a 'generalized grievance[ ],' concededly insufficient for standing, could simply form an organization to advance their grievance, and, whenever an agency decision offended their position, secure standing by asserting that it had thrown practical roadblocks in the way of the organization's successes." *HWTC II*, 861 F.2d at 287 (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974)). HWTC's new argument about the impact of a reduction in dues is founded on the alleged competitive harm to members, and hence cannot withstand *HWTC II* either.

ed supplemental briefing on prudential standing in these cases. In their supplemental briefs, petitioners argued that *HWTC II*, 861 F.2d 277, was wrongly decided and indicated HWTC's intention to request rehearing en banc. Petitioner HWTC Supplemental Brief at 1–7 & n. 1 (No. 88–1177); Supplemental Brief of Petitioners at 1–6 & n. 1 (Nos. 87–1487, 87–1548). This court denied rehearing en banc in *HWTC II*, 861 F.2d 277, on December 20, 1988. *HWTC II* thus remains the law of the circuit; therefore petitioners' arguments attacking that decision are unavailing.

■ At oral argument, HWTC attempted to distinguish the legislative design of the provisions at issue in these cases from the congressional intent found in *HWTC II*, 861 F.2d 277. To this purpose, HWTC attached to Petitioner HWTC's Response to EPA's Motion to Strike Affidavit of Adolph B. Chilek (No. 88–1177) an "Addendum of Legislative History on Congressional Intent to Benefit the Hazardous Waste Treatment Industry." The legislative history thus cited by HWTC,[3] however, merely confirms "Congress's indisputable intent to encourage proper disposal and recycling of hazardous wastes." *HWTC II*, 861 F.2d at 283. That *leitmotif, HWTC II* settled, does not amount to evidence either of "congressional intent to improve the competitive position of high tech recyclers, or of any reason to picture such firms as suitable challengers" of Agency departures from Congress's ultimate goals. *Id.* at 284. Petitioners cannot so easily avoid the reach of *HWTC II*, nor can this panel; ruling in fidelity to that decision, we hold that petitioners' claims here fail to meet the prudential standing requirement.

## II. Direct Environmental Claims

The *HWTC II*, 861 F.2d 277, court did find standing for the organization as representative of one member firm; that firm, HWTC alleged, was injured as a "consumer" of the oil subject to the challenged regulations.

HWTC asserted that the firm's facilities for receiving used oil are injured by adulterated or contaminated used oils, and that it is expensive to test every tankload. *HWTC II*, 861 F.2d at 281. More stringent EPA regulations would tend to protect against this sort of injury.

HWTC's charter states that it aims, among other things, to "promote the protection of the environment through the adoption of environmentally sound practices and methods of destroying and treating hazardous wastes." *Id.* 861 F.2d at 285–86. The court in *HWTC II* had "no doubt of [HWTC's] bona fides" and held that the member firm's consumer interest was germane to the environmental organizational purpose. *Id.* The germaneness test requires "mere pertinence between litigation subject and organizational purpose." *Id.* Relying on the reasoning in *Humane Society of the United States v. Hodel*, 840 F.2d 45, 58–60 (D.C.Cir.1988), the *HWTC II*, 861 F.2d 277, panel concluded that HWTC had standing to represent the consumer environmental interest there raised. *HWTC II*, 861 F.2d at 286.

■ According to affidavits attached to the supplemental briefs of petitioners, HWTC added two individuals as members on October 12, 1988. HWTC alleges direct environmental harm to these two individuals, Adolph Chilek and Larry Coogan, from the EPA actions challenged in No. 88–1177, and in Nos. 87–1487 and 87–1548, respectively. Chilek owns a homestead located directly on top of the Boling Salt Dome in Texas. Petitioner HWTC Supplemental Brief at 7 (No. 88–1177). Coogan lives and works near St. Mary's kiln in Michigan. Supplemental Brief of Petitioners at 6–7 (Nos. 87–1487, 87–1548). By asserting the interests of these new members, HWTC seeks to bring the organization within *HWTC II*'s consumer environmental injury holding.

---

**3.** *See, e.g.,* H.R.Conf.Rep. No. 1133, 98th Cong., 2d Sess. 80 (1984) ("advanced treatment, recycling, incineration and other waste control technologies should replace land disposal"); S.Rep. No. 284, 98th Cong., 1st Sess. 6 (1983) (capacity for "alternative technologies" can "be developed if a viable market can be assured"); H.R.Rep. No. 1918, 98th Cong., 1st Sess. 32 (1983) ("prudent public policy" would "encourage the development of alternative treatment technology and capacity").

The EPA has moved to strike the affidavits that allege the membership of Chilek and Coogan in HWTC and their threatened injuries. We agree with the EPA that it would circumvent the time limit on filing petitions for review under RCRA, 42 U.S.C. § 6976(a)(1) (1982), to permit these new members, at this late date, to establish standing for HWTC. Under the cited time prescription, a party must file a petition for review of a regulation within ninety days of promulgation of that regulation.

Neither Chilek nor Coogan was a member when HWTC filed its petitions for review or at any other time during the two relevant RCRA ninety-day time frames. The regulations at issue in No. 88–1177 were published in the Federal Register on December 10, 1987, and HWTC filed a timely petition on March 2, 1988. The notice of extension at issue in Nos. 87–1487 and 87–1548 was published in the Federal Register on September 15, 1987, and HWTC filed a timely petition on October 6, 1987. Both Chilek and Coogan would be time-barred if they asserted their claims as individuals on October 12, 1988.

Under *Hunt v. Washington State Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), an organization's standing turns on its members' standing to sue in their own right. *Id.* at 343, 97 S.Ct. at 2441. Although the interests Chilek and Coogan assert may rank with the consumer interest held sufficient for standing in *HWTC II*, 861 F.2d 277, these individuals did not file timely petitions for review. Petitioners assert that the time prescription, section 6976(a)(1), sets merely a "notice deadline." Petitioners' Memorandum in Opposition to Respondent's Motion to Strike Affidavit at 8 (Nos. 87–1487, 87–1548). Circuit precedent instructs, however, that the time direction in question reflects " 'the important purpose of imparting finality into the administrative process, thereby conserving administrative resources.' " *Eagle–Picher Indus., Inc. v. EPA*, 759 F.2d 905, 911 (D.C.Cir.1985) (quot-

ing *Natural Resources Defense Council v. NRC*, 666 F.2d 595, 602 (D.C.Cir.1981)).

■ To allow a "new and improved" HWTC to establish a judicially cognizable challenge several months beyond RCRA's prescription period would undercut " 'a deliberate congressional choice to impose statutory finality on agency orders.' " *Id.* (quoting *City of Rochester v. Bond*, 603 F.2d 927, 935 (D.C.Cir.1979)). Were we to agree with HWTC, an organization without current standing to sue could file a timely petition for review and thereby extend the statutory period while it seeks out and signs up a person who could have sued but did not do so within the prescribed time. Such an approach to timeliness would render the finality of agency action an uncertain, sometimes thing.

*Oil, Chemical and Atomic Workers International Union v. OSHRC*, 671 F.2d 643 (D.C.Cir.), *cert. denied*, 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982), is not precedent for the position petitioners here urge. In that case we allowed a petitioner to name the proper party respondent outside the sixty-day review period provided by the Occupational Safety and Health Act. *Id.* at 653. The petitioner had inadvertently named the incorrect respondent, and the amendment we permitted simply corrected the petition to read as it should have and could have read within the statutory period. In these cases, in contrast, HWTC seeks to allege facts (the memberships of Chilek and Coogan) necessary for standing that it could not have alleged truthfully within the statutory period. Although a court "has the power to allow or require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing," *Warth v. Seldin*, 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975), *accord Sierra Club v. Morton*, 405 U.S. 727, 736 n. 8, 92 S.Ct. 1361, 1366 n. 8, 31 L.Ed.2d 636 (1972), a petitioner asserting organizational standing cannot succeed if the new affiliation it pleads came about only after the statutory time limit.[4]

---

**4.** Section 6976(a)(1) creates an exception only        "if such petition for review is based solely on

III. ENVIRONMENTAL CONSUMER CLAIMS

Lax EPA regulation of hazardous waste disposal in salt domes, HWTC maintains, creates a dilemma for some of its members, and both horns entail economic injury: "[M]embers that provide cleanup services or waste brokering for customers will either lose business if they do not use geologic repositories, or face greater potential liability for disposal in unprotective geologic repositories." Reply Brief of Petitioner at 4 (No. 88–1177). At oral argument HWTC vigorously asserted that members would be "forced" to utilize salt domes and become "consumers" of EPA-permitted "lax" disposal methods. In the event these allegedly unsafe repositories leak, HWTC continued, members using them would face strict, joint, and several liability under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9657 (1982).

■ This potential liability, however, insofar as it is incurred voluntarily, is not an injury that " 'fairly can be traced to the challenged action,' " as required by Supreme Court decisions interpreting Article III of the Constitution. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (quoting *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976)). Rather, to the extent that this injury is self-inflicted, it is "so completely due to the [complainant's] own fault as to break the causal chain."[5] Unlike the "consumer" firm in *HWTC II*, 861 F.2d 277, members choosing geologic repositories can avoid the threatened injury by choosing safer methods. If they instead choose disposal methods they believe to be

unsafe, they presumably so do in their own self-interest. It is of no moment for the inquiry at hand that they may be "forced" by competitive pressures to choose unsafe methods; we cannot deem them injured, in the sense relevant under controlling precedent, by their own choice to compete in kind.

CONCLUSION

For the reasons stated, the petitions for review in these cases are dismissed. The petitioners, under circuit precedent, lack standing to obtain judicial review. The affidavits alleging membership of Chilek and Coogan cannot establish HWTC's standing to challenge regulations under RCRA because the two individuals joined HWTC outside the statutory period. Accordingly, the motions to strike the two affidavits are dismissed as moot.

*It is so ordered.*

grounds arising after such ninetieth day." 42 U.S.C. § 6976(a)(1) (1982). This exception does not apply in these cases, in which the substantive grounds for the petitions arose, if at all, before the time limit expired.

5. 13 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2d § 3531.5, at 458 (2d ed. 1984); *see, e.g., Diamond v. Charles*, 476 U.S. 54, 69–70, 106 S.Ct. 1697, 1707–08, 90 L.Ed.2d 48 (1986) (party's liability

for attorney's fees was a consequence of his own decision to intervene in the case, "cannot fairly be traced" to the law challenged, and cannot confer Article III standing); *Pennsylvania v. New Jersey*, 426 U.S. 660, 664, 96 S.Ct. 2333, 2335, 49 L.Ed.2d 124 (1976) (injuries to plaintiff states' fiscs were "self-inflicted," and no state "can be heard to complain about damage inflicted by its own hand").