# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 18, 2013       Decided January 17, 2014

No. 11-1307

OKLAHOMA DEPARTMENT OF ENVIRONMENTAL QUALITY,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

NAVAJO NATION, ET AL.,
INTERVENORS

On Petition for Review of a Final Rule of the
United States Environmental Protection Agency

*Lynn H. Slade* argued the cause for petitioner. With him on the briefs were *William C. Scott* and *Deana M. Bennett*.

*John R. Jacus*, *Charles A. Breer*, and *Radcliffe Dann*, *IV* were on the brief for *amicus curiae* Oklahoma Independent Petroleum Association in support of petitioner.

*David A. Carson*, Attorney, United States Department of Justice, argued the cause for respondent. With him on the briefs were *Robert G. Dreher*, Acting Assistant Attorney General, and *Jon M. Lipshultz*, Attorney.

*Philip Baker-Shenk*, *Kurt E. Blase*, *Richard A. Duncan*, and *Jill Elise Grant* were on the brief for Tribal Intervenors in support of respondent.

*Beverly M. Conerton*, Assistant Attorney General, Office of the Attorney General for the State of Minnesota was on the brief for *amicus curiae* State of Minnesota in support of respondent.

*Michael C. Small* and *James E. Tasse* were on the brief for *amicus curiae* The Osage Nation in support of respondent.

Before: HENDERSON and BROWN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: The Oklahoma Department of Environmental Quality petitions for review of a final rule promulgated by the Environmental Protection Agency establishing a federal implementation plan for the attainment of national air quality standards in "Indian country." *See* Review of New Sources and Modifications in Indian Country, 76 Fed. Reg. 38,748 (2011) (codified at 40 C.F.R. pts. 49 and 51) (hereinafter Indian Country NSR Rule). Jurisdiction to implement the Clean Air Act lies initially in either a state or an Indian tribe. The EPA may in certain circumstances implement a federal program in Indian country, *see* 42 U.S.C. § 7601(d), but when it does so, in our view, it is subject to the same jurisdictional limitations as the tribe in whose shoes it stands. Because the EPA requires a tribe to show it has jurisdiction before regulating Indian country outside a reservation, yet made no demonstration of tribal jurisdiction before itself regulating those areas, we hold the

agency was without authority to displace Oklahoma's state implementation plan in non-reservation Indian country. We therefore grant the petition for review and vacate the Indian Country NSR Rule with respect to non-reservation lands.

## I. Background

The Clean Air Act (CAA or Act) places upon each state "the primary responsibility for assuring air quality within the entire geographic area comprising such State." 42 U.S.C. § 7407(a).[*] In order to carry out that responsibility, each state must submit for EPA approval a state implementation plan (SIP) for the attainment of national air quality standards, § 7410(a)(1), and each SIP must contain a permitting or so-called "new source review" (NSR) program. *See* § 7410(a)(2)(C) (requiring "regulation of the modification and construction of any stationary source within the areas covered by the plan ..., including a permit program"). The EPA first approved Oklahoma's SIP in 1972, *see* Approval and Promulgation of Implementation Plans, 37 Fed. Reg. 10,842, 10,888/1, and in modified form that SIP remains in effect today, *see* 40 C.F.R. § 52.1922.

In 1990 the Congress amended the Act to authorize the EPA "to treat Indian tribes as States," § 7601(d)(1)(A), subject to the condition that "the functions to be exercised by the Indian tribe pertain to the management and protection of air resources within the exterior boundaries of the reservation or other areas within the tribe's jurisdiction," § 7601(d)(2)(B). In 1998 the EPA interpreted the geographic reach of the tribal

---

[*] The Clean Air Act is codified at 42 U.S.C. § 7401 *et seq*. For convenience, we refer to sections of 42 U.S.C. as though they were sections of the Act.

jurisdiction created in 1990 to track the definition of "Indian country" in the federal criminal code.[*] Indian Tribes: Air Quality Planning and Management, 63 Fed. Reg. 7254, 7259/1 (1998) (codified at 40 C.F.R. pts. 9, 35, 49, 50, and 81) (hereinafter Tribal Authority Rule). More specifically, the EPA interpreted the term "reservation" in § 7601(d)(2)(B) to include formal reservations, Pueblos, and tribal trust lands, the latter two categories being essentially informal reservations, *id*. at 7258/1; it interpreted the phrase "other areas within the tribe's jurisdiction" to include "all non-reservation areas of Indian country," *id*. at 7259/1, i.e., the "dependent Indian communities" and "Indian allotments" referenced in 18 U.S.C. § 1151(b)–(c).[**]

Although the Tribal Authority Rule thus allowed Indian tribes to implement the Act over both reservation and non-reservation areas of Indian country, it differentiated between the two in an important respect: The Rule authorized each tribe to implement the Act "over its reservation without requiring the tribe to demonstrate its own jurisdiction,"

---

[*] Section 1151 of Title 18 defines "Indian country" to include:

   (a)  all land within the limits of any Indian reservation ...,
   (b)  all dependent Indian communities ..., and
   (c)  all Indian allotments.

[**] "Dependent Indian communities include ... 'Indian communities under federal protection that did not originate in either a federal or tribal act of reserving, or were not specifically designated a reservation,'" while allotments are "land[s] 'owned by individual Indians and either held in trust by the United States or subject to a statutory restriction on alienation.'" *Ariz. Pub. Serv. Co. v. EPA*, 211 F.3d 1280, 1285–86 (D.C. Cir. 2000) (quoting FELIX S. COHEN, HANDBOOK OF FEDERAL INDIAN LAW 38, 40 (1982)).

whereas before implementing the Act over a "non-reservation area[]," the tribe would have to "demonstrate [its] jurisdiction" under federal Indian law. *Id.* at 7255/2. We upheld the Rule and this distinction in *Arizona Public Service Co. v. EPA*, 211 F.3d 1280, 1294–95 (2000).

In the 1990 amendments to the Act the Congress also authorized the EPA to displace a tribe and directly regulate areas of Indian country in "any case in which the Administrator [of the EPA] determines that the treatment of Indian tribes as identical to States is inappropriate or administratively infeasible." 42 U.S.C. § 7601(d)(4). In 2011, pursuant to this authority, the EPA issued the Indian Country NSR Rule here under review. 76 Fed. Reg. at 38,778/2. This rule established a federal implementation plan (FIP) including an NSR program covering all Indian country nationwide except where the EPA had already approved a tribal NSR program or expressly authorized a SIP to be enforced. *Id*. at 38,752/2; 40 C.F.R. §§ 49.151(c), 49.166(c).

The EPA explained it was promulgating the FIP in order to fill a regulatory gap created by the general lack of state authority to regulate air quality in Indian country and the failure of many tribes to implement NSR programs of their own:

> We believe ... states generally lack the authority to regulate air quality in Indian country .... We interpret past approvals and delegations of NSR programs [in SIPs] as not extending to Indian country unless the state has made an explicit demonstration of jurisdiction over Indian country and we have explicitly approved or delegated the state's program for such area.

76 Fed. Reg. at 38,752/2 n.9; *see also id.* at 38,778/3 ("[O]nly a few Tribes have yet sought eligibility to administer a minor NSR program and no Tribe has yet sought eligibility for the nonattainment major NSR program"). Because SIPs did not ordinarily apply to Indian country and few tribes had sought to administer the Act over their lands, the EPA concluded much of Indian country was unregulated. The EPA therefore issued the FIP in order to fill the regulatory gap until such time as a tribe's approved NSR program displaced the FIP.

Oklahoma petitions for review of the Indian Country NSR Rule "only as it pertains to non-reservation 'Indian country' lands, including allotments and dependent Indian communities." Oklahoma does not challenge the rule as it pertains to reservations, whether formal or informal. The Navajo Nation, the Shakopee Mdewakanton Sioux Community, the Red Lake Band of Chippewa, and the United South and Eastern Tribes, Inc. intervene in support of the EPA.

## II.  Analysis

Oklahoma contends the Indian Country NSR Rule is arbitrary and capricious, in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), for two reasons: First, the regulatory gap upon which the EPA premised the Rule simply does not exist; each state's SIP applies to all non-reservation Indian country within its geographic borders except where a tribe has demonstrated its inherent jurisdiction. Because non-reservation Indian country is always covered by a SIP unless it has been displaced by a tribal implementation plan (TIP), there is no regulatory gap to be filled by a FIP. Second, the EPA was without authority to implement a nationwide FIP; the EPA, Oklahoma contends, may establish a FIP only upon finding that a specific

jurisdiction's plan is inadequate. Because we grant Oklahoma's petition based upon its first argument, we do not reach its second point.

A.  Threshold Objections

Before we may consider the merits of the parties' arguments, we must address a series of threshold issues, the first two of which are jurisdictional. First, the EPA questions whether Oklahoma has standing to bring the challenge at hand. Second, the EPA contends Oklahoma's claim that its SIP presumptively applies over non-reservation Indian country is time-barred because the issue was decided by the Tribal Authority Rule issued in 1998. Third, the EPA argues that the same claim is forfeit because Oklahoma failed to raise it in the rulemaking proceeding for the Indian Country NSR Rule now under review. Although there is something to each of these objections, none is ultimately a bar to our reaching the merits of this case.

1.  Standing

The "irreducible constitutional minimum of standing contains three elements": (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Oklahoma alleges it is injured by the Indian Country NSR Rule because the Rule "divests [Oklahoma] of regulatory authority over areas otherwise within [its] purview," to wit, non-reservation Indian country, and that injury would be redressed if the court were to vacate the Rule in relevant part.

In supplemental briefs ordered by the court after oral argument, the EPA challenged this straightforward account of standing on the ground that Oklahoma's injury is self-inflicted

and could be redressed by the state itself pursuant to the Safe, Accountable, Flexible, Efficient Transportation Equity Act (SAFETEA) of 2005, Pub. L. No. 109–59, 119 Stat. 1144, section 10211(a) of which provides:

> [I]f the Administrator of the [EPA] determines that a regulatory program submitted by the State of Oklahoma for approval by the Administrator under a law administered by the Administrator meets applicable requirements of the law, and the Administrator approves the State to administer the State program under the law with respect to areas in the State that are not Indian country, on request of the State, the Administrator shall approve the State to administer the State program in the areas of the State that are in Indian country, without any further demonstration of authority by the State.

Because the EPA has already approved Oklahoma to administer its SIP "with respect to areas in the State that are not Indian country," the EPA suggests Oklahoma can obtain regulatory authority over Indian country merely by seeking the EPA's approval of an application pursuant to the SAFETEA; therefore Oklahoma's alleged injury is caused not by the Rule but by the State's own failure to seek relief under the SAFETEA. *See Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir. 1989) ("[T]o the extent that this injury is self-inflicted, it is so completely due to the complainant's own fault as to break the causal chain" (internal quotation marks and brackets omitted)).

We do not think relief under the SAFETEA is so certain or complete as to render Oklahoma's injury self-inflicted. As the State points out, the EPA might attach a condition to its approval of Oklahoma's SIP as applied to Indian country that is "inconsistent with Oklahoma's current SIP authority." And

if the EPA does interpret the SAFETEA as authorizing it to attach conditions, then the agency might well be entitled to judicial deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). Lest one think this concern merely speculative, we note that although the EPA argues the "SAFETEA provides a remedy to the State's alleged injury," it has stopped short, both in its brief and at oral argument, of stating that Oklahoma would be entitled to approval without conditions of an application under the SAFETEA.

Clearly, Oklahoma has alleged an injury caused by the rule it challenges and redressable by our vacatur of that rule. The possibility of an alternative remedy, of uncertain availability and effect, does not render its injury self-inflicted. *Cf. Cmty. Nutrition Inst. v. Block*, 698 F.2d 1239, 1247 (D.C. Cir. 1983) ("Consumers have been injured economically, even if they could ameliorate this injury by purchasing some alternative product"), *rev'd on other grounds*, 467 U.S. 340 (1984). Oklahoma therefore has standing to bring this petition for review.[*]

2. Timeliness

The EPA argues Oklahoma comes to this court more than a decade too late to argue its SIP presumptively applies in non-reservation Indian country because the EPA "made crystal clear in the Tribal Authority Rule" it issued in 1998 "that it interpreted past SIP approvals as not applying in

---

[*] Because SAFETEA does not provide certain and complete relief to Oklahoma's injury, we need not decide whether any prudential or Article III rule of standing would prevent Oklahoma from pursuing this action if SAFETEA did provide an adequate alternative avenue for relief.

Indian country." A petition for review of a final rule issued pursuant to the Clean Air Act must be filed within 60 days of the publication of that rule in the Federal Register, 42 U.S.C. § 7607(b)(1), a requirement that "is jurisdictional in nature," *Med. Waste Inst. & Energy Recovery Council v. EPA*, 645 F.3d 420, 427 (D.C. Cir. 2011) (internal quotation marks omitted). If the EPA decided in the Tribal Authority Rule that Oklahoma's SIP does not apply in non-reservation Indian country, then we would be powerless to review that decision now. As we read the Tribal Authority Rule, however, the EPA did not decide that issue in 1998.

The EPA points to this passage in the preamble of the Tribal Authority Rule:

> It is EPA's position that, unless a state has explicitly demonstrated its authority and been expressly approved by EPA to implement CAA programs in Indian country, EPA is the appropriate entity to be implementing CAA programs prior to tribal primacy.... EPA will not and cannot "grandfather" any state authority over Indian country where no explicit demonstration and approval of such authority has been made.

63 Fed. Reg. at 7258/3. Although this passage refers to "Indian country" writ large, it was issued in response to a commenter's asserting that the "states have historically regulated non-[Indian] CAA-related activities on fee lands within reservation boundaries." *Id.* A reasonable reader might therefore understand the EPA was refusing to grandfather state authority over reservations, leaving state authority over non-reservation Indian country intact. This impression would be reinforced on the very next page: "[W]hile Congress delegated CAA authority to eligible tribes

for reservation areas, the CAA authorizes a tribe to implement a program in non-reservation areas only if it can demonstrate authority over such areas under federal Indian law." *Id.* at 7259/2. This statement can fairly be read to imply, as Oklahoma argues, state authority would be withdrawn from non-reservation areas only upon a proper showing of tribal authority.

The EPA's contrary reading of these preambular statements is not implausible, and if Oklahoma were prescient perhaps it would have "challenged the agency's authority from the beginning." *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 461 (D.C. Cir. 1998). Be that as it may, however, we have before us a "different rule than the one promulgated" in 1998, *id.* at 460, because it says expressly what the 1998 Rule at most left uncertain: The EPA deems a SIP presumptively inapplicable in both reservation and non-reservation areas of Indian country because "states generally lack the authority to regulate air quality in Indian country." Indian Country NSR Rule, 76 Fed. Reg. at 38,779/1. Oklahoma's challenge to this express determination in the Indian Country NSR Rule is therefore timely.

### 3. Forfeiture

The EPA's next and last hope of avoiding a resolution on the merits of Oklahoma's petition for review is its argument the State forfeited its claim that a SIP presumptively applies in non-reservation Indian country; here the agency focuses particularly upon Oklahoma's invocation of 42 U.S.C. § 7407(a) ("Each State shall have the primary responsibility for assuring air quality within the entire geographic area comprising such State") because Oklahoma "failed to raise ... [that] argument to EPA during the public comment period on the Indian country NSR rule."

We have "long required a party seeking review of agency action to exhaust its administrative remedies before seeking judicial review." *Natural Res. Def. Council, Inc. v. EPA*, 824 F.2d 1146, 1150 (1987). An argument not presented to the agency is forfeit before the court. *See Vt. Dep't of Pub. Serv. v. United States*, 684 F.3d 149, 158 (D.C. Cir. 2012) ("By failing to exhaust their ... argument, they [forfeited] judicial consideration thereof").

Although the argument might have been raised more clearly before the EPA, we do not think we must for that reason disregard Oklahoma's argument concerning the reach of its SIP. The reason for the forfeiture rule is to ensure an agency has had "an opportunity to consider the matter, make its ruling, and state the reasons for its action," *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946); "litigants must not be encouraged to 'sandbag' agencies by withholding legal arguments for tactical reasons until they reach the courts of appeal," *USAir, Inc. v. Dep't of Transp.*, 969 F.2d 1256, 1260 (D.C. Cir. 1992). Unfair surprise, however, is not a concern here because the EPA has a preexisting "'duty to examine key assumptions as part of its affirmative burden of promulgating and explaining a non-arbitrary, non-capricious rule' and therefore ... 'must justify that assumption even if no one objects to it during the comment period.'" *Appalachian Power Co. v. EPA*, 135 F.3d 791, 818 (D.C. Cir. 1998) (quoting *Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 534–35 (D.C. Cir. 1983)). The agency's determination that a SIP presumptively does not apply in Indian country was the source of the "regulatory gap" upon which the EPA premised the need for the Indian Country NSR Rule. *See* 76 Fed. Reg. at 38,778/2. It was therefore a "key assumption" that required justification by the agency. That the EPA did not discharge its duty to examine that assumption is most evident because it did not

even consider whether the assumption was consistent with our opinion in *Michigan v. EPA*, 268 F.3d 1075 (2001), of which more below.  Because the EPA did not examine the key assumption concerning the applicability of a SIP in Indian country, the issue was not forfeited and will be considered here.

B.  Merits

Oklahoma argues its SIP applies to non-reservation Indian country within the state because (1) regulatory jurisdiction under the Act must lie initially with either a tribe or a state; (2) a tribe may exercise jurisdiction over non-reservation Indian country only if it demonstrates its authority to so do; (3) the EPA, when instituting a FIP pursuant to § 7601(d)(4) for want of a TIP, may exercise no more jurisdiction than could the tribe in whose stead it acts; and (4) neither a tribe nor the EPA has made a demonstration of tribal authority over any, much less all, non-reservation Indian country.  We agree.

The EPA issued the Indian Country NSR Rule under authority of 42 U.S.C. § 7601(d)(4).  *See* 76 Fed. Reg. at 38,778/2.  The Act there provides:

In any case in which the Administrator determines that the treatment of Indian tribes as identical to States is inappropriate or administratively infeasible, the Administrator may provide, by regulation, other means by which the Administrator will directly administer such provisions so as to achieve the appropriate purpose.

Because state implementation plans generally did not extend to Indian country and few tribes had sought to implement NSR programs of their own, the EPA perceived "a

gap for implementation of these programs ... in Indian country." 76 Fed. Reg. at 38,778/3. The EPA therefore exercised its authority under § 7601(d)(4) to administer a federal program over Indian country in the stead of the tribes. *Id.*

We last considered the EPA's authority under § 7601(d)(4) when we reviewed the Federal Operating Permits Program, 64 Fed. Reg. 8247 (1999) (codified at 40 C.F.R. pt. 71), in *Michigan v. EPA*. In that regulation the EPA had established a federal CAA program throughout "Indian country" but declared it would "treat areas for which EPA believes the Indian country status is in question as Indian country." 64 Fed. Reg. at 8262/2–3. Two states and some private parties challenged the rule on the ground that § 7601(d)(4) permits the EPA to act only in the shoes of a tribe, and a tribe may regulate an area only if it in fact has jurisdiction — not if its jurisdiction is merely "in question." *See Michigan*, 268 F.3d at 1084.

The EPA defended the rule on two principal grounds. First, it argued its authority to regulate lands "in question" was based upon its "overarching authority to protect air quality within Indian country, not solely on its authority to act in the stead of an Indian Tribe" under § 7601(d)(4). Proposed Rule, Federal Operating Permits Program, 62 Fed. Reg. 13,748, 13,749/2 (1997). The EPA, in other words, could regulate in Indian country even where a tribe could not. We rejected this assertion because "the plain meaning of 42 U.S.C. § 7601(d) and § 7661a grants EPA the authority to 'promulgate, administer and enforce a [federal operating permit] program' for a state or tribe *if, and only if*, (1) the state or tribe fails to submit an operating program or (2) the operating program is disapproved by EPA or (3) EPA determines the state or tribe is not adequately administering

and enforcing a program." *Michigan*, 268 F.3d at 1082. Because the EPA may administer a federal program only "in the shoes of a tribe or the shoes of [a] state," *id.* at 1085, it can exercise no more jurisdiction than could the tribe or state whose shoes it fills. It follows that "[i]f a state has an approved implementation plan, then EPA's only grounds for jurisdiction under the Act is the fact that an area is Indian country, not that its status is 'in question.'" *Id.*

The EPA's second argument was that it wished to avoid deciding jurisdictional disputes between states and tribes yet needed to provide for regulation over the lands "in question." *Id.* at 1084. We rejected that argument because the Congress had vested jurisdiction to implement the Act in the states, *see* 42 U.S.C. § 7661a(d), and then authorized tribes to be treated as states, *see* § 7601(d)(1)(A); the Congress left no "residual ... EPA jurisdiction, authority, or power," 268 F.3d at 1083. In sum, under the Act "[j]urisdiction as between states and tribes is binary," *id.* at 1086; "if [a] state has jurisdiction, then [a] tribe does not, and vice versa," *id.* at 1088. By refusing to decide the status of "in question" lands, the EPA was arrogating jurisdiction to itself and thereby "depriving both tribes and states of the opportunity afforded them ... to operate a permitting program." *Id.* at 1085. Jurisdiction, we concluded, "must either lie with the state or with the tribe — one or the other — and EPA does not have a third option of not deciding." *Id.* at 1086.

The principles we identified in *Michigan* control this case. Jurisdiction under the Act must lie either with a state or with a tribe, and the Act unambiguously delineates the two: A state has "primary responsibility," i.e., jurisdiction, "within the entire geographic area comprising such State," § 7407(a), except insofar as the EPA has authorized the treatment of "Indian tribes as States" pursuant to § 7601(d)(1)(A). In its

rule specifying when it would treat Indian tribes as states, the EPA interpreted the Act "to grant to an eligible tribe jurisdiction over its reservation without requiring the tribe to demonstrate its own jurisdiction, but to require a tribe to demonstrate jurisdiction over any ... non-reservation areas, over which it seeks to implement a CAA program." Tribal Authority Rule, 63 Fed. Reg. at 7255/2; *accord Ariz. Pub. Serv. Co.*, 211 F.3d at 1285–86, 1294–95. A state therefore has regulatory jurisdiction within its geographic boundaries except where a tribe has a reservation or has demonstrated its jurisdiction. It is undisputed that neither a tribe nor the EPA has demonstrated tribal jurisdiction over all non-reservation Indian country in Oklahoma. Accordingly, the State retains jurisdiction over non-reservation Indian country and its implementation plan is effective therein.

The EPA objects first on the ground that § 7407(a) does not establish a presumption of state jurisdiction over Indian country because that provision, properly interpreted, and federal Indian common law both show the Congress intended "either EPA or a Tribe would exercise CAA regulatory jurisdiction in Indian country." This objection begs the question at issue. All agree the states have no CAA jurisdiction, presumptive or otherwise, over areas of Indian country that a tribe — and thus, potentially the EPA on behalf of a tribe — may regulate. The question in dispute is whether the states have CAA jurisdiction over areas of Indian country that, by the EPA's own account, no tribe may regulate because no tribe has demonstrated its jurisdiction. Because jurisdiction under the Act "must either lie with the state or with the tribe," *Michigan*, 268 F.3d at 1086, the answer to that question is plainly yes.

The EPA next maintains this court did not decide in *Michigan* that "a State must *necessarily* have authority over

any non-reservation area of Indian country if a Tribe fails to make a sufficient showing of inherent tribal authority over the area." The court's binary understanding of jurisdiction, according to the EPA, "was limited to the consideration of in-question areas, which might *not* be Indian country ...; EPA's authority over areas that unquestionably *are* Indian country was not questioned." True, true; irrelevant. The EPA's treatment of non-reservation Indian country in the Indian Country NSR Rule today is identical to its treatment of "in question" lands in the Federal Operating Permits Program of 1999: Here, the EPA insists no tribe may exercise jurisdiction because no tribe has demonstrated authority; it simultaneously maintains no state may exercise jurisdiction because the land is "unquestionably" Indian country. *Michigan* does not permit such a status; either a state has jurisdiction or a tribe has jurisdiction.

The EPA also contends the Tribal Authority Rule does not require it to "make the same showing as [a Tribe would have to make] before it may" exercise regulatory authority on a tribe's behalf. Although the EPA's interpretation of its own regulation is ordinarily entitled to controlling weight, *see Auer v. Robbins*, 519 U.S. 452, 461–62 (1997), we cannot defer where, as here, the interpretation "violate[s] the very statute the agency administers," *City of Idaho Falls, Idaho v. FERC*, 629 F.3d 222, 230 (D.C. Cir. 2011); *see also Stinson v. United States*, 508 U.S. 36, 45 (1993) (no deference to an agency's interpretation of its own regulation where the interpretation "violate[s] the Constitution or a federal statute"). As we explained in *Michigan*, § 7601(d)(4) unambiguously confers no "inherent or underlying EPA authority, but rather a role for the EPA if the tribe, for whatever reason, does not promulgate a tribal implementation program." 268 F.3d at 1083. When regulating in the shoes of a tribe, *id.* at 1085, therefore, the EPA is subject to the same

limitations as the tribe itself.[*]   Because a tribe must demonstrate tribal jurisdiction before it may exercise CAA jurisdiction over non-reservation Indian country, so too must the EPA.

Finally, the EPA argues it "reasonably interpreted its past SIP approvals as not applying in Indian country" and that again we should defer to its interpretation.  The rationale for that interpretation, however, was the EPA's assumption that "states generally lack the authority to regulate air quality in Indian country," Indian Country NSR Rule, 76 Fed. Reg. at 38,752/2 n.9, including, as relevant here, non-reservation areas of Indian country over which no tribe has demonstrated jurisdiction.  Because it is based upon an assumption that is incorrect as a matter of law, the EPA's interpretation of its past SIP approvals is "plainly erroneous" and warrants no deference from the court.  *Auer*, 519 U.S. at 461.

---

[*] For this reason we also reject the intervenors' contention that federal Indian common law and § 7601(d)(4) of the Act provide the EPA with "CAA jurisdiction throughout Indian country, whereas states must demonstrate their jurisdiction for non-reservation Indian country and tribes must do so as well."  This is but a variant of the EPA's unsuccessful argument in *Michigan* that the agency had a residual jurisdiction exceeding that of the tribes or states in whose shoes it stood.  *See* 268 F.3d at 1083.  Nor are we persuaded by the intervenors' attempt to distinguish *Michigan* on the ground that here the FIP can be displaced by "a tribal or state program upon a showing of adequate jurisdiction and approval."  The EPA is not justified in exercising jurisdiction it does not have merely by making the arrogation more easily undone.

19

### III. Conclusion

We hold a state has regulatory jurisdiction under the Clean Air Act over all land within its territory and outside the boundaries of an Indian reservation except insofar as an Indian tribe or the EPA has demonstrated a tribe has jurisdiction. Until such a demonstration has been made, neither a tribe nor the EPA standing in the shoes of a tribe may displace a state's implementation plan with respect to a non-reservation area of the state. We therefore grant Oklahoma's petition for review and vacate the Indian Country NSR Rule with respect to non-reservation Indian country.

*So ordered.*