# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 4, 2022          Decided August 11, 2023

No. 21-1159

STATE OF ARIZONA, ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY AND MICHAEL S.
REAGAN, ADMINISTRATOR,
RESPONDENTS

———

On Petition for Review of a Final Rule
of the Environmental Protection Agency

———

*Drew C. Ensign*, Deputy Solicitor General, Office of the Attorney General for the State of Arizona, argued the cause for petitioners. With him on the briefs were *Mark Brnovich*, Attorney General, *Jeff Landry*, Attorney General, Office of the Attorney General for the State of Louisiana, *Elizabeth Baker Murrill*, Solicitor General, *John M. O'Connor*, Attorney General, Office of the Attorney General for the State of Oklahoma, *Mithun Mansinghani*, Solicitor General, *Bryan Cleveland,* Deputy Solicitor General, *Dave Yost*, Attorney General, Office of the Attorney General for the State of Ohio*, Benjamin M. Flowers*, Solicitor General, *Ken Paxton*,

Attorney General, Office of the Attorney General for the State of Texas, and *Judd E. Stone, II*, Solicitor General.

*Sue Chen*, Attorney, U.S. Department of Justice, argued the cause for respondents. With her on the brief was *Todd Kim*, Assistant Attorney General.

Before: KATSAS, *Circuit Judge*, and RANDOLPH and ROGERS, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: Suppose this Court were to extend a briefing deadline. The affected litigant would gain the option of taking more time to file its brief, but still could file on the original schedule. This litigant surely would raise an eyebrow in claiming that the extension caused it an injury. The petitioners here face a similar difficulty.

The Environmental Protection Agency extended the deadline for compliance with a revised national drinking water regulation, which in turn extended the deadline for states to enforce conforming revisions to their own regulations. Five states seek to challenge the federal extension, which they say will cause them various harms. Because nothing prevents these states from enforcing the revised standard on the original schedule, we hold that they lack Article III standing.

I

A

The Safe Drinking Water Act requires EPA to promulgate national regulations to reduce the level of contaminants in public drinking water. 42 U.S.C. § 300g-

1(b)(1)(A). At least every six years, EPA must "review and revise, as appropriate," each such regulation. *Id.* § 300g-1(b)(9). Revised regulations may increase but not decrease health protections. *Id.* A regulation must require compliance within three years of its promulgation. *Id.* § 300g-1(b)(10). EPA refers to the date when a regulation is codified in the Code of Federal Regulations as the "effective date" and the date when compliance is required as the "compliance date."[1]

The Act permits states to assume "primary enforcement responsibility" for public drinking water. 42 U.S.C. § 300g-2(a). To do so, a state must adopt regulations "no less stringent" than the national ones and must develop adequate enforcement procedures. *Id.* § 300g-2(a)(1) & (2). These requirements apply to revised regulations as well as new ones. 40 C.F.R. § 142.12. Accordingly, states assuming primary enforcement responsibility must update their regulations to remain at least as stringent as the federal ones. But states always may exceed the federal floor; regardless of any change in the national regulations, states may increase the stringency of their own regulations at any time.

EPA refers to states that have assumed primary enforcement responsibility under this scheme as "primacy states." Forty-nine states have achieved primacy, including the five states who are the petitioners here.

B

At the end of the Trump Administration, EPA promulgated significant revisions to a national regulation for reducing lead contamination in drinking water. National

---

[1] The Act refers to the date when compliance is required as the "effective date." 42 U.S.C. § 300g-1(b)(10). To minimize confusion, we will follow EPA's usage in this opinion.

Primary Drinking Water Regulations: Lead and Copper Rule Revisions, 86 Fed. Reg. 4,198 (Jan. 15, 2021) (Revision Rule). This rule set an effective date of March 16, 2021, and a compliance date of January 16, 2024 (one day after the federal holiday on January 15, 2024).

Upon taking office, President Biden issued Executive Order 13,990, which directed federal agencies to consider whether Trump-era rules fit the new administration's agenda. 86 Fed. Reg. 7,037 (Jan. 25, 2021). Heeding that charge, EPA briefly delayed the effective date of the Revision Rule to June 17, 2021. National Primary Drinking Water Regulations: Lead and Copper Rule Revisions; Delay of Effective Date, 86 Fed. Reg. 14,003 (Mar. 12, 2021).

A few months later, EPA pushed things back once again. To accommodate its ongoing review of the Revision Rule, EPA further delayed the rule's effective date until December 16, 2021. National Primary Drinking Water Regulations: Lead and Copper Rule Revisions; Delay of Effective and Compliance Dates, 86 Fed. Reg. 31,939, 31,942–43 (June 16, 2021) (Delay Rule). And to prevent states and regulated public water systems from having to work towards compliance while the review remained ongoing, EPA pushed back the compliance date to October 16, 2024. *Id.* at 31,941. This nine-month delay matched the total nine-month delay of the Revision Rule's effective date. Five states—Arizona, Louisiana, Ohio, Oklahoma, and Texas—have petitioned for review of the Delay Rule. EPA has imposed no further delays, so the Revision Rule became effective on December 16, 2021, and its compliance date remains October 16, 2024.

On December 17, 2021, EPA announced the results of its review under the Executive Order. Review of the National Primary Drinking Water Regulation: Lead and Copper Rule

Revisions (LCRR), 86 Fed. Reg. 71,574 (Dec. 17, 2021) (Final Review). EPA confirmed its earlier view that the Revision Rule "improves public health protection" compared to the rule it replaced. *Id.* at 71,577. At the same time, EPA promised further improvement in a future rulemaking. *See id.* at 71,578. No party has challenged the Final Review.

II

As primacy states, the petitioners must maintain and enforce regulations at least as stringent as the national drinking water regulation for lead. Under the Revision Rule as originally promulgated on January 15, 2021, this meant that petitioners had to promulgate conforming regulations requiring compliance by January 16, 2024. Between mid-March and mid-December 2021, EPA considered whether to rescind the Revision Rule and ultimately decided against doing so. And while these deliberations were ongoing, the Delay Rule pushed back the national compliance date, and thus the state compliance dates, to October 16, 2024. In a nutshell, EPA considered for nine months whether to rescind the Revision Rule, and it simultaneously pushed back the relevant compliance deadlines by the nine months.

Nothing prevents primacy states from meeting their obligations ahead of the federal deadline. The petitioners here thus complain about having a choice, but not a duty, to take more time to begin enforcing regulations conforming to the Revision Rule. Like the hypothetical litigant given an extended briefing deadline, the states cannot show that this extension causes them an injury. And absent an injury traceable to the Delay Rule and redressable by an order setting it aside, the states lack standing to challenge that rule.

The Constitution limits the "judicial Power of the United States" to "Cases" or "Controversies." U.S. Const. art. III,

§§ 1–2. Standing doctrine is "rooted in the traditional understanding" of this limitation. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish Article III standing, a complaining party "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). These requirements ensure that federal courts "decide only the rights of individuals" instead of exercising "general legal oversight of the Legislative and Executive Branches." *Id.* (cleaned up).

The states assert several theories of how the extended compliance deadline harms them, but none is persuasive.

## A

The states contend that the Delay Rule will cause them to lose money. They argue that delayed enforcement of tougher regulations will cause more of their residents to suffer health problems from lead-contaminated water, which will cause the states to increase their spending on programs like Medicaid. EPA responds that these alleged injuries are self-inflicted because primacy states retain the option of adhering to the original deadline for enforcing regulations at least as stringent as the Revision Rule. EPA invokes a line of cases holding that an alleged injury is "self-inflicted"—and thus cannot satisfy the traceability requirement of standing—if it is "so completely due to the complainant's own fault as to break the causal chain" from its injury back to the challenged agency action. *Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir. 1989) (quoting 13 C. Wright & A. Miller, *Federal Practice and Procedure* § 3531.5 (2d ed. 1984)).

We have applied that principle in several cases like this one. In *Grocery Manufacturers Ass'n v. EPA*, 693 F.3d 169 (D.C. Cir. 2012), we held that petroleum companies lacked standing to challenge an EPA waiver giving them "the option," but not the duty, to sell an otherwise prohibited blend of fuel. *Id.* at 177. In *Public Citizen, Inc. v. NHTSA*, 489 F.3d 1279 (D.C. Cir. 2007), we held that tire manufacturers lacked standing to challenge a minimum performance standard that they believed was too lax, despite the possibility of tort and contract liability if they chose not to exceed it. *Id.* at 1290. And in *Petro-Chem Processing*, we held that treatment facilities lacked standing to challenge a rule permitting, but not requiring, the disposal of hazardous waste in allegedly unsafe salt domes, despite the prospect of tort liability for choosing to do so. 866 F.2d at 438. In each case, we held that the regulated party's failure to pursue a safer available option made the alleged injury "self-inflicted" and thus destroyed traceability. As these cases make clear, a complainant cannot fairly trace its injuries to a regulation that merely allows, but does not require, the riskier choice that allegedly causes its injury.

That principle controls this case. As explained above, the Delay Rule extended by nine months the federal and state compliance dates for the Revision Rule and its state analogs. But the Delay Rule in no way prevented primacy states from proceeding on the original schedule. Their choice to delay makes self-inflicted any injuries flowing from that choice.

Resisting this conclusion, the states invoke *Air Alliance Houston v. EPA*, 906 F.3d 1049 (D.C. Cir. 2018) (per curiam). There, EPA delayed the effectiveness of its Chemical Disaster Rule, which assertedly caused objecting states to incur costs "responding to accidental releases" and "investigating a refinery explosion." *Id.* at 1059. We upheld

the states' standing to challenge the delay based on their increased spending to remediate these harms. *See id.*

*Air Alliance* is inapposite here. For one thing, we did not address any question about what kind of injuries count as "self-inflicted." And had we done so, we likely would have held that the states there were practically if not legally compelled to engage in conventional exercises of their police power, which would make their injuries not "self-inflicted." *See New Jersey v. EPA*, 989 F.3d 1038, 1044–47 (D.C. Cir. 2021). That is nothing like the relevant choice for the states here—whether to meet an extant duty to pass and enforce certain regulations on original or extended deadlines.

The states highlight a contention implicitly rejected in *Air Alliance*. EPA argued that the injuries there were self-inflicted because the states failed to avail themselves of a different option—obtaining a delegation of regulatory authority from EPA and then using it to speed up enforcement. But none of the petitioning states had this authority. *See* Respondent Br., Ex. B., at 5, *Air Alliance*, 906 F.3d 1049. And obtaining it would have required them to commit resources to assume primary enforcement responsibility for a federal regulatory scheme. In contrast, the petitioning states here already have assumed that responsibility, and none of them has claimed any desire to give it up. Regardless of the Delay Rule, these primacy states have a legal obligation to promulgate and enforce new regulations at least as strong as the Revision Rule. And as noted above, setting compliance dates consistent with the original rather than the extended deadline imposes no further burden on the states. The states' choice of the later deadline makes self-inflicted any injuries flowing from the delay.

Switching gears, the states contend that acting sooner rather than later has its own costs. For one thing, they assert that diverging from a federal standard is more costly than following it. But the states do not develop this point even in general terms, much less explain what costs would flow if the only divergence involved selecting the original federal deadline as opposed to the extended one. Nor can the states base their standing on costs associated with enforcement that is sooner than they would like. Were we to set aside the Delay Rule, we would only exacerbate that alleged injury, by forcing primacy states to begin enforcement nine months earlier than they otherwise would have to. In short, the costs to the states of enforcing drinking water regulations flow from their decisions to assume primacy, and setting aside the Delay Rule would do nothing to reduce them.

In their reply brief, the states try to link their monetary injuries to the conduct of other states rather than to their own timing choices. They claim that the Delay Rule will cause other states to tarry in enforcing the Revision Rule, which will harm those states' citizens, who will then move to the petitioner states, which will then have to increase their Medicaid and other spending. Because this attenuated theory of standing is hardly self-evident, the states had to raise it— and support it with evidence—in their opening brief. *See*, *e.g.*, *Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 612–16 (D.C. Cir. 2019); *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002); D.C. Cir. R. 28(a)(7). Yet their opening brief nowhere hints at a standing theory keyed to independent acts of other states and to interstate migration. The states failed to preserve a standing argument based on this distinct causal chain.

10

B

The states claim that because the Delay Rule directly regulates them, their standing to challenge it is self-evident. This argument traces back to a statement in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), that there is "ordinarily little question" of standing if the complainant "is himself an object" of the rule in question. *Id.* at 561–62. We too have said that standing is "usually" self-evident if a rule directly regulates the plaintiff. *Corbett v. TSA*, 19 F.4th 478, 483–84 (D.C. Cir. 2021); *Bonacci v. TSA*, 909 F.3d 1155, 1159–60 (D.C. Cir. 2018). Yet these cases involved rules that constrained what regulated parties may lawfully do—a traveler forced to wear masks in *Corbett*, and a pilot forced to go through airport security in *Bonacci*.

As explained above, a different analysis governs rules that expand the regulated parties' lawful range of choice. In those cases, the fact that the rule *applies* to a party hardly makes self-evident that party's standing to challenge the rule. As noted above, a petroleum company cannot challenge a rule allowing, but not requiring, it to sell additional kinds of fuels. *Grocery Mfrs. Ass'n*, 693 F.3d at 177. And a treatment facility cannot challenge a rule allowing, but not requiring, it to use an allegedly dangerous method for disposing of hazardous waste. *Petro-Chem Processing*, 866 F.2d at 438.

Because the Delay Rule gives the states more options, their standing to challenge it cannot be characterized as self-evident. And as explained above, the states have not shown any injury fairly traceable to having this choice.

C

The states assert that the Delay Rule increased regulatory uncertainty, leading to larger compliance costs. This claim fails for lack of traceability or redressability.

EPA did create regulatory uncertainty. As a result of the Executive Order, it considered for nine months whether to rescind the Revision Rule. Then, EPA promised a further rulemaking to improve upon it. At every step along the way, EPA acknowledged that these actions created uncertainty. Final Review, 86 Fed. Reg. at 71,580; Delay Rule, 86 Fed. Reg. at 31,941, 31,945.

But this uncertainty is traceable only to the decisions to reconsider the Revision Rule and then to expand it, neither of which is reviewable agency action. *See Portland Cement Ass'n v. EPA*, 665 F.3d 177, 193–94 (D.C. Cir. 2011). Far from causing the uncertainty that follows whenever an agency considers whether to amend existing regulations, the Delay Rule mitigated the uncertainty, by pushing back deadlines while the reconsideration ran its course.

The states' uncertainty also is not redressable in this litigation. Their harm is not knowing what future obligations they will face, making it difficult to plan. But the Delay Rule gives the states more time to hedge their bets. Setting it aside would worsen any problem of regulatory uncertainty, taking as a given EPA's unreviewable decision to consider changes to the Revision Rule.

12

## III

For these reasons, we dismiss the petition for review for lack of Article III standing.

*So ordered.*